IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID E. FINKELSTEIN, M.D., | No. C 07-01130 CRB |
| Plaintiff, | **ORDER** |
| v. | |
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, et al., | |
| Defendants. | |

This is an action brought by Plaintiff Dr. David Finkelstein ("Finkelstein") to obtain disability benefits under a policy issued by Defendant Guardian Life Insurance ("Guardian"). At present, the case involves only state law claims. It was originally filed in San Francisco County Superior Court, and Defendants removed the case to this Court, putatively on the basis of federal question jurisdiction. Finkelstein filed a motion to remand. For the reasons set forth below, the motion to remand is hereby DENIED without prejudice. Further, the parties are ORDERED to conduct such additional discovery as is necessary to help determine the applicability of ERISA to the disputed insurance policy, after which discovery Plaintiff may renew his motion to remand.

**BACKGROUND**

Finkelstein, a California resident, is a board-certified gynecologist and obstetrician. He has practiced medicine since the 1980s under the auspices of a corporation called David

Finkelstein, M.D., Inc. ("the Medical Corporation").  In 1992, Finkelstein decided that he needed additional disability insurance to protect his business.  To meet this need, the Medical Corporation purchased coverage under Policy No. 616527 ("the Policy").  The Policy, issued by Guardian, obliges that insurer to pay benefits for any work-related disabilities suffered by covered employees.

At all times relevant to this lawsuit, Finkelstein was covered under the Policy.  In addition, Finkelstein offered coverage under the Policy to some, but apparently not all, of his employees.  For example, employees had to work more than thirty hours per week to be eligible for coverage under the Policy.  According to Finkelstein, coverage was completely optional.  Some employees elected to receive coverage under the Policy, while others did not.  Those who did "receive[d] less salary to cover the premium costs of the disability coverage." Decl. of David Finklestein in Supp. of Pl.'s Mot. to Remand ¶ 11.  The record does not clearly establish, however, whether these employees' salaries were reduced by exactly the amount of the applicable premiums.

Finkelstein contends that the Medical Corporation served only as a conduit for the payment of premiums on behalf of covered employees, and he asserts that the company did not subsidize the employees' premiums.  Finkelstein further asserts that he did not receive any compensation from Guardian for placing his employees under the Policy and that neither he nor the company ever recommended or endorsed the Policy.  Rather, Finkelstein says that he merely made the Policy available to his employees because a group policy was "the most cost-effective way to satisfy [his] personal need for disability coverage." Id. ¶ 13.  According to Finkelstein, his only responsibility regarding the Policy was to transmit premium payments and to update the roster of covered employees, and all other administrative duties were handled by Guardian.

In approximately 1998, Finkelstein began experiencing pain in his right wrist and hand. At that time, and apparently at all times since then, Finkelstein has been the only person covered under the Policy.  He asserts that none of the employees whom he employed during this period elected to obtain coverage under the Policy.  Also around this same period

of time, the Medical Corporation stopped paying premiums on Finkelstein's behalf, and Finkelstein started paying the premiums through his personal bank account. Decl. of David Finkelstein in Supp. of Pl.'s Reply ¶ 2. It is unclear whether the people employed by Finkelstein during this period still had the option of receiving coverage under the Policy.

Finkelstein's wrist injury left him increasingly unable to perform his duties as an obstetrician and gynecologist, and as a result his medical practice suffered. Although he applied for and received benefits for partial disability under another insurance policy, Finkelstein claims that his insurance agent, Richard Sullivan, told him not to file a claim on his Guardian policy until he was completely disabled. Compl. ¶¶ 3-6, 16-17.

Finkelstein's physical condition continued to deteriorate, and eventually he developed problems in his left wrist as well. The problems with his wrists became so severe that he could no longer grip objects, and so in September of 2004, Finkelstein shut down his medical practice and filed a claim under the Policy for total disability benefits. More than a year later, Guardian made a final determination to deny Finkelstein's claim. The complaint states that the insurer's decision rested in part on the claim that Finkelstein "should have filed his claim when he was partially disabled" and that the delay in filing "prevented [the insurer] from accessing all of [his] medical records." Id. ¶ 23.

Finkelstein sued Guardian, his insurance agent, and the Colt Employee Benefits Insurance Agency. In his complaint, Finkelstein sets forth six state-law claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) intentional misrepresentation, (4) professional negligence, (5) negligent misrepresentation, (6) and "tort of another." See Compl. ¶¶ 30-89. Defendants removed the case to federal court. Now pending before the Court is Finkelstein's motion for a remand to state court.

## DISCUSSION

The question presented is whether this lawsuit is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* If so, the Court has jurisdiction, and removal was proper. If not, the Court has no jurisdiction, and remand is necessary. Yet there is more to this motion than meets the eye. Although the

3

procedural posture of the case happens to present the applicability of ERISA as a jurisdictional question, the motion is also a proxy for the substantive question of whether ERISA preempts all of Finkelstein's state law claims. Thus, granting the motion to remand ostensibly would permit Finkelstein's state law claims to survive, while denying the motion to remand may effectively preempt them.

Defendants argue that the Policy is, and always has been, subject to ERISA; that Finkelstein's state law claims are therefore preempted by federal statute; and that this Court therefore has jurisdiction to adjudicate the controversy. Finkelstein advances two arguments about why ERISA does not apply. First, he argues that the Policy falls within the Department of Labor's "safe harbor" regulations, meaning that the Policy has never been subject to ERISA. Second, he argues that, even if ERISA may have governed the Policy at some point, it does not apply to the claims presented in this particular lawsuit because of Finkelstein's status both as an employer and as the only person covered under the Policy at the time he filed his claim with Guardian.

## I. Application of ERISA to the Policy

A case is "removable to federal court" even though it "purports to raise only state law claims" when such claims are governed by the terms of an ERISA plan. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 67 (1987). "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir. 1986); see also Zavora v. Paul Revere Life Ins. Co., 145 F.3d 1118, 1120 (9th Cir. 1998).

ERISA governs all "employee welfare benefit plans," 29 U.S.C. § 1003(a), that are "established or maintained by an employer or by an employee organization," id. § 1002(1). Such plans are defined by statute as follows:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, [certain benefits, including medical or disability insurance].

4

29 U.S.C. § 1002(1). So that not all employee benefit programs become "welfare plans" covered by ERISA, the Department of Labor has set forth regulations establishing a "safe harbor" for employers who wish to offer benefits to their employees but do not wish to be ensnared by the federal statute. Specifically, federal regulations suggest that insurance programs comporting with the following four requirement are beyond ERISA's grasp:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). Plaintiff argues that the Policy falls into under this safe harbor regulation and therefore has never been covered by ERISA. Defendants argue that does not.

The Court finds that there is insufficient evidence in the record to determine whether the Policy constitutes an "employee welfare benefit plan." There seems to be no genuine dispute that the Policy comports with at least some elements of the safe harbor provisions, such as the requirement that employees' participation be optional. But there exists a legitimate dispute about the Policy's compliance with other relevant aspects of the "safe harbor provision," including, most significantly, whether Finkelstein acted as a neutral conduit for the remission of policy premiums, or instead, whether he in fact promoted or subsidized his employees' participation under the Policy in any way. See Johnson v. Watts Regulator Co., 63 F.3d 1129, 1134 (1st Cir. 1995) (describing the employer's "neutrality" as "the key to the rationale for not treating such a [safe harbor] program as an employee benefit plan" (quoting 40 Fed. Reg. 34,526 (1975))).

Accordingly, the Court is unable at this stage of the proceedings to determine whether ERISA ever applied to the Policy. Finkelstein has submitted a declaration in which he states

5

that the Medical Corporation made no contributions and received no compensation in connection with the plan. (First Finkelstein Decl. ¶¶ 12, 17.) But Defendants have raised a plausible concern about whether such a self-serving declaration can remove the Policy from the purview of ERISA, especially when the declaration is unsupported by any corroborating evidence, such as payroll deductions or relevant tax returns, that would appear to be in Finkelstein's possession. The Court does not now make any rulings about the credibility of Finkelstein's assertions, nor does it purport to make any findings about the truth of the matters stated therein. Instead, the Court concludes that the record now before it provides an inadequate basis for determining whether the Policy ever constituted an "employee welfare benefits plan" that was "established or maintained" under ERISA. For this reason, the parties are hereby ORDERED to conduct whatever discovery is necessary or appropriate to determine the applicability of ERISA to the Policy, either at the time of its inception, at the time of Finkelstein's claim, or at any time in between.[1]

## II. Application of ERISA to Finkelstein's Particular Claims

Finkelstein advances a second argument, however, that even if the Policy could in some circumstances be understood as an "employee welfare benefits plan" under ERISA, the federal statute still does not govern under the particular circumstances of in this lawsuit.

---

[1] In his brief, Finkelstein argues against discovery. He notes that, because Defendants removed this action to federal court, they bear the burden of establishing a basis for this Court's jurisdiction. He argues that, because Defendants have not yet been able to establish conclusively that ERISA governs this action, this Court should grant the motion to remand and let the California courts address any further arguments that Defendant may raise.

For two reasons, this argument is unpersuasive. First, Plaintiff cites to no authority, and this Court is aware of none, to support the proposition that federal courts must decide remand motions strictly on the basis of what is filed in the moving papers. Indeed, such an argument runs contrary to the common practice of permitting parties to engage in preliminary and limited discovery to resolve any factual disputes that may raise jurisdictional doubts. See, e.g., Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 691-92 (9th Cir. 2006) (holding that a district court is not required, but in its discretion may choose, to permit "jurisdictional discovery" in cases removed from state court). Second, jurisdictional discovery is especially appropriate in a case such as this one where the jurisdictional issue overlaps with the merits of the claims. As noted above, a ruling on jurisdiction is also, in effect, a ruling on the preemptive effect of ERISA on Finkelstein's six state-law claims. The Court is disinclined to make such a significant ruling on a spotty record, especially when, no matter how narrowly drawn this Court's order might be, it can reasonably be argued that a decision to remand would have preclusive effect on Defendants' ability to raise the issue of preemption in state court.

6

Specifically, Finkelstein notes that (1) he is the owner of the Medical Corporation, rather than one of its employees; (2) he was the only insured under the Policy at the time he submitted his claims to Guardian, and for several years prior when his disability was developing; and (3) the "employer" in this case, *i.e.* the Medical Corporation, is no longer in business. He argues that these facts compel the conclusion that ERISA does not apply here.

The Court is unpersuaded. Finkelstein's argument rests primarily on the Ninth Circuit's decision in Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872 (9th Cir. 2001). In that case, the Ninth Circuit addressed the claim of an employee who was originally covered under a group policy offered by her employer, but subsequently "converted her group coverage to an individual policy." Id. at 874. When she filed a complaint years later under that second policy, the Ninth Circuit rejected the insurers' argument that her state law claims were preempted. Id.

Waks, however, is critically different from this case. Unlike Waks, this case does not involve "a new, separate, individual policy based on conversion rights contained in the ERISA plan." Id. at 876. Further, unlike Waks, the Policy in this case is not a contract "directly between the insurer and the insured." Id. In other words, the Policy here is not a contract between Guardian and Finkelstein, but rather between Guardian and the Medical Corporation. And finally, unlike Waks, this case does not involve a policy that was "converted" by any formal means. See id. at 873-78 (using the terms "convert," "conversion," or "converted" sixty-seven times in explaining why the plaintiff's "new, separate, individual policy" was not governed by ERISA); id. at 876 (distinguishing other Ninth Circuit cases applying ERISA on the ground that they did not involve "converted policies").

For this reason, the Court is inclined to the view that the case is controlled not by Waks, but instead by Peterson v. American Life & Health Insurance Co., 48 F.3d 404 (9th Cir. 1995). In Peterson, two business partners and one of their employees obtained coverage under a short-term health insurance policy. Id. at 406. After the employee and one of the partners obtained coverage under a different policy, the remaining partner, who was at that

7

time the only insured under the original short-term policy, filed a lawsuit to obtain benefits. Id. The Ninth Circuit held that ERISA governed the action, notwithstanding the fact that only the partner remained on the policy. Id. at 408. To be sure, the Peterson case is in some ways distinguishable from the case at bar. See, e.g., id. at 407-08 (emphasizing that the employer "continued to provide insurance to at least one non-partner employee, albeit not under the [challenged] policy"). Nonetheless, this case is factually more analogous to Peterson than it is to Waks, and subsequent decisions by the Ninth Circuit have suggested that Peterson applies to cases such as this one. See LaVenture v. Prudential Insurance Co. of America, 237 F.3d 1042, 1045 (9th Cir. 2001) ("In Peterson, the issue was whether an ERISA plan ceased being such when the employees it originally covered depart, leaving only the business owner as a participant.").

Also, as a matter of jurisprudence and policy, it is much wiser to apply Peterson in this case than Waks. This approach is more consistent with the numerous cases applying ERISA to disputes arising even after the circumstances that originally may have justified application of ERISA at the policy's inception have changed. See Peterson, 48 F.3d at 408 ("We have repeatedly held that, [when] policies are derived from ERISA plans, they continue to be governed by ERISA even after conversion."); Qualls v. Blue Cross of Cal., Inc., 22 F.3d 839 (9th Cir. 1994) (holding that questions related to the conversion of a terminated employee's benefits "continued to be governed by ERISA"); Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 817 (9th Cir. 1992) (holding that ERISA applied to an employee who elected to continue participation in the employer-sponsored health care plan by making payments to the insurer after leaving employment due to an injury); Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1132-33 (9th Cir. 1992) (holding that ERISA encompassed an employee's claim for wrongful termination because it related primarily to the subsequent denial of benefits under an ERISA plan). Repeatedly, then, the Ninth Circuit has held that a change in circumstances does not extinguish the application of ERISA to a welfare benefits plan, even though ERISA would not apply to a policy newly executed under such circumstances.

//

The Ninth Circuit's decisions in these cases are based on principles of sound judicial administration. As Defendants point out, the sort of plan metamorphosis suggested by Finkelstein would undermine the entire point of the ERISA statute, which was to provide certainty, to both employers and employees, about the rules applicable to employee benefits plans. Plaintiff's proposed approach would allow the comings and goings of plan participants to determine whether ERISA governs. There is certainly nothing in Waks to suggest that ERISA should be applied in the on-again, off-again fashion suggested by Finkelstein. In fact, Judge Fletcher's emphasis in Waks on the "conversion" of the plaintiff's policy suggests that the touchstone for ERISA's application ought to be clearer than merely the participants who happen to subscribe to the plan at a given time. Furthermore, it is entirely possible for employers to shield themselves from the strictures of ERISA by keeping their own policies and plans separate from those of their employees. See, e.g., In re Watson, 161 F.3d 593, 595, (9th Cir. 1998) (holding that ERISA did not apply to a retirement benefits plan where the only covered party was the "sole owner of [a] medical corporation" and his other employees were covered under a "separate and distinct" benefits plan). Where, as here, an employer like Finkelstein decides to take advantage of the economies of scale that accompany his employees' participation in a benefits plan or insurance policy, the case law suggests that he must accept the rules that come along with his employees' participation. Cf. Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 6 (2004) (holding that "a working owner, [who joins a plan] in common with other employees, qualifies for the protections ERISA affords plan participants and is governed by the rights and remedies ERISA specifies").

Finally, the Court is unpersuaded by Finkelstein's arguments regarding Judge Alsup's unpublished decision in Christie v. Standard Ins. Co., 2002 WL 31505648 (N.D. Cal. July 19, 2002). In that case, a physician had offered disability benefits to her employees under an insurance policy, but after becoming disabled and winding down her business, she applied for benefits under the policy. Id. at *1. The insurer moved to dismiss all of the physician's

9

state-law claims on the ground that they were preempted by ERISA, and the physician argued that ERISA did not apply, for many of the same reasons now argued by Finkelstein. Id. Judge Alsup denied the motion to dismiss *without prejudice* because he could not conclude that the physician would be unable prove *any* set of facts to preclude the application of ERISA. Instead, Judge Alsup found that "the record is too thin and the applicable law too poorly briefed" to determine whether a conversion might have taken place, or whether any of the physician's claims were preempted. Id. at *5.

Christie is inapposite to the present motion, which requires the Court to decide whether the actual facts of the case provide a basis for jurisdiction. Moreover, the Court notes that, once Judge Alsup was permitted to look beyond the face of the complaint and was not constrained to imagine whether it would be possible for the plaintiff in Christie to prove some hypothetical set of facts that would defeat ERISA's application, he ultimately *granted* the insurer's summary judgment motion--precisely because he agreed that the state law claims they were preempted by federal law. Christie v. Standard Ins. Co., No. C 02-2520 WHA (N.D. Cal. Apr. 2, 2003) (unpublished opinion).

## CONCLUSION

For the reasons set forth above, the Court is unable to conclude that the unique circumstances of Finkelstein's case precludes the application of ERISA to this action. Nonetheless, as the record now exists, the Court also finds itself unable to determine conclusively whether ERISA governs this action, or instead, whether Plaintiff may proceed on his state law claims, in which case a remand would be required.

Plaintiff's motion to remand is therefore DENIED without prejudice. The parties are hereby ORDERED to complete the limited jurisdictional discovery necessary to establish the applicability of ERISA to the Policy, and in particular to Finkelstein's claims. The Court is aware of Plaintiff's argument that he would be without a remedy under ERISA due to the ostensible absence of a plan administrator. The Court also notes Defendants' suggestion at oral argument that a claim for relief under ERISA may be pursued against the insurer where, perhaps as here, it acts as the plan administrator. These arguments were not thoroughly

briefed by the parties in connection with the pending motion, and they appear to dovetail somewhat with the underlying issue about the applicability of the "safe harbor" provision. See 29 C.F.R. § 2510.3-1(j)(3). The Court would find additional briefing on the issue helpful, if and when Plaintiff renews his motion to remand.

**IT IS SO ORDERED.**

Dated:  May 8, 2007

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE